IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RAINELLE D.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-736 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Rainelle D. ("Rainelle") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Rainelle argues that the Administrative Law Judge ("ALJ") erred by failing to properly determine her residual functional capacity ("RFC"). I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. 21.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Rainelle failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his

the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Rainelle filed for SSI on October 2, 2014, alleging disability beginning on September 14, 2013, due to her back and leg problems, anxiety, and depression. R. 435, 451. The state agency denied Rainelle's application at the initial level of administrative review on February 11, 2015, and at the reconsideration level of review on April 10, 2015. R. 158–168, 170–180. On May 19, 2017, ALJ Jeffrey Schueler held a hearing to consider Rainelle's claim. R. 109–52. Counsel represented Rainelle at the 2017 hearing, which included testimony from vocational expert Ricky Bradley. Id. On July 6, 2017, the ALJ entered his decision denying the claim for SSI benefits. R. 184–97. The ALJ found that Rainelle had the severe physical impairments of osteoarthritis of the hips and degenerative disc disease of the lumbar spine. R. 186. The ALJ also concluded that Rainelle retained the RFC to perform sedentary work with certain limitations and could perform jobs that exist in significant numbers in the national economy, such as an information clerk and

---

ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

telephone solicitor. R. 190, 196. The Appeals Council remanded the case on August 30, 2018 and directed the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base. R. 15, 203–206.

On April 21, 2020, ALJ Michael Dennard held a second hearing by telephone to consider Rainelle's claim. R. 41–73. Counsel represented Rainelle at the hearing, which included testimony from vocational expert Kristin Panella. Id. On May 5, 2020, the ALJ entered his decision analyzing Rainelle's claim under the familiar five-step process[3] and denying her claim for SSI benefits. R. 15–32. The relevant period for Rainelle's SSI claim is from her October 2, 2014 application date through the ALJ's decision on May 5, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month she satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed).

The ALJ found that Rainelle had not engaged in substantial gainful activity since October 2, 2014, the application date.[4] R. 17. The ALJ determined that Rainelle suffered from severe impairments of left hip osteoarthritis, status post replacement; right hip osteoarthritis, status post replacement; lumbar degenerative disc disease; bilateral knee osteoarthritis; and obesity. R. 17–

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Rainelle was 48 years old on the date of the ALJ decision in 2020, which is a younger individual under the Act. R. 30.

19. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–20. The ALJ also determined that Rainelle had mild limitations in mental functioning and her anxiety and depression did not qualify as severe mental health impairments. R. 18.

The ALJ concluded that Rainelle retained the RFC to perform sedentary work with certain limitations. R. 20. Specifically, Rainelle can occasionally operate hand controls with the right hand; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights; and can occasionally work around hazardous machinery. Rainelle can occasionally work in dust, fumes, and pulmonary irritants and can occasionally work in vibration. Id.

The ALJ found that Rainelle had no past relevant work, but that she can perform sedentary and unskilled jobs that exist in significant numbers in the national economy, such as a document preparer, final assembler, and charge account clerk. R. 31. Thus, the ALJ determined that Rainelle was not disabled. Id. Rainelle appealed the ALJ's decision, and the Appeals Council denied her request for review on October 6, 2020. R. 1–3.

## ANALYSIS

Rainelle alleges that the ALJ failed to properly determine her RFC determination and that his decision is not supported by substantial evidence.

**A. Medical History**

1. Treatment History

Prior to the relevant period, Rainelle had a left total hip replacement in August 2014 (R. 582–87) and a revision surgery in September 2014 (R. 591–97). On October 27, 2014,

Michael Wolfe, M.D., noted that Rainelle had mild pain, walked without supports and overall was progressing well from the revision surgery. R. 1518.

On January 5, 2015, Rainelle returned to Dr. Wolfe with a new complaint of right hip pain. R. 1525. Dr. Wolfe noted that Rainelle's imaging showed moderate to severe osteoarthritis, but Rainelle declined another hip replacement and preferred hip injections instead. Id. Rainelle successfully underwent hip injections in March and June 2015. R. 1230–33. Rainelle also treated her hip pain with medication and physical therapy in 2015. See R. 628–31, 637, 776, 783, 796–97, 832, 865–903. During physical therapy visits from January to May 2015, Rainelle used a walker and rated less hip pain after each session. R. 865, 869, 870, 871, 872. At primary care visits from April to September 2015, Kari Thomas, D.O., noted that Rainelle had a normal gait. R. 1371, 1381, 1392, 1403.

On May 4, 2015, Rainelle went to the emergency room for tailbone pain after she fell off a motorcycle. R. 877–83. Rainelle was discharged in satisfactory condition, and she improved with pain medication. R. 874, 885–87. In July 2015, Rainelle reported to Dr. Thomas that her medication helped with her hip pain, and she was "able to function." R. 1388. Similarly in September 2015, Dr. Thomas noted that Rainelle's hip medication continued to work, but she complained of numbness and pain in her hands. R. 1399. In December 2015, Rainelle complained to Dr. Wolfe of mild occasional hip soreness and hand pain. R. 1531. Dr. Wolfe found that Rainelle showed a good range of motion with no guarding and no limitations in her daily living activities. He referred her to Cesar Bravo, M.D., to assess her ulnar neuropathy. Id.

On March 14, 2016, Rainelle visited the hospital for a left hip injury after she was pushed off a porch. R. 837–41. Bradley Williams, P.A., prescribed pain medication and an abduction

brace for the left hip injury. In April 2016, Dr. Wolfe instructed Rainelle to use a walker or cane as needed. R. 1020, 1034.

On May 29, 2016, Rainelle went to the hospital and reported that her left hip popped out of place, which was "easily reduced" and treated with pain medication by Adam Kennah, M.D. R. 906–08. The next day Rainelle dislocated her hip twice. She had surgery for the dislocation on May 31, 2016. R. 936, 941, 943. During her June 2016 follow-up visit with Dr. Wolfe, Rainelle complained of 10/10 left hip pain despite occasionally smiling, periods of tearfulness, and laughing appropriately. R. 1047. Dr. Wolfe prescribed a brace and pain medication. Id. At her July 2016 follow-up visit with Dr. Wolfe, Rainelle did not have further left hip dislocation in her brace and the doctor discontinued use of the brace in August 2016. R. 1054, 1061. Rainelle complained of 8 out of 10 hip pain, and Dr. Wolfe noted that Rainelle had a history of exhibiting drug seeking behavior. R. 1054.

In August 2016, Dr. Wolfe recommended that Rainelle have right hip surgery after shoe lifts did not alleviate her right hip pain. R. 1061. Rainelle quit smoking and had pre-operative visits in November 2016, during which Dr. Thomas noted that her medical problems were "controlled currently" and Rainelle felt "good in general." R. 1443. Rainelle had right hip surgery on December 6, 2016. R. 1197–1200.

On January 19, 2017, Rainelle was walking without supports and reported mild right hip pain. R. 1117. Dr. Wolfe noted that Rainelle was "progressing well" and her x-ray and examination were unremarkable. Id. At physical therapy in February 2017, Rainelle reported that she walked the entire loop at Walmart and had to sit because of lower back pain, but did not have any hip pain. R. 1246. In March 2017, Rainelle reported that her right hip was stuck or

6

"catching," but denied pain. R. 1823. Allen Crowder, P.A., noted that despite "catching," Rainelle was able to accomplish basic activities of daily living. Id.

In April 2017, Rainelle visited Dr. Thomas and reported increased numbness and tingling in her legs and incontinence symptoms. R. 1469. Dr. Thomas referred her to a urologist. R. 1474. At her physical therapy session in March 2017, Laura Musser, O.T.R./L, noted that Rainelle had minimal pain and made "excellent progress in strength, range of motion, and improved ambulatory pattern," with mild strength deficits that affected her ability to perform daily tasks, including stairs. R. 1577.

At her September 2017 visit, Rainelle reported that she was doing okay overall and the swelling in her legs was getting better, but she had back pain from scoliosis and experienced more neuropathy problems. R. 1749. Dr. Thomas advised Rainelle that she cannot continue her medication with continued marijuana use. R. 1754. In January 2018, Dr. Wolfe noted that Rainelle had no right hip complaints, was unlimited in her daily life activities, had normal gait, good range of motion, and unremarkable x-rays, despite her report of left-sided low back pain that worsened with prolonged standing. R. 1817. In February 2018, Dr. Thomas noted that Rainelle was overall doing okay despite her neuropathy pain and depression symptoms. R. 1723.

In August 2018, Rainelle fell down stairs, which caused a loosening in her left hip hardware. R. 1807. Dr. Wolfe did not recommend immediate treatment since Rainelle was able to walk without supports. Id. On November 5, 2018, Rainelle reported to Dr. Thomas that she did not have back pain anymore, which the doctor credited to her medication. R. 1929. Dr. Thomas noted that Rainelle had mild lower leg edema as a side effect of her medication and treated the mild edema with a water pill. R. 1934.

Rainelle visited Dr. Wolfe in August 2019, with complaints of progressive thigh pain,

7

but noted that she still was walking without supports. R. 1793. Dr. Wolfe noted that Rainelle had mild pain with range of motion, no pain with palpation, and a mildly antalgic gait and advised her of the need for left hip revision surgery. R. 1794. In October 2019, Rainelle reported to Dr. Wolfe that she "accidentally ran into a trailer hitch" the week prior and landed on her hands but denied pain in either hip. R. 1771. Rainelle further reported to that she was in good general health, fair mental health, that she was moderately limited in every day physical activities, and that her pain level was a "3" on average. Id. Benjamin Coobs, M.D., did not recommend the left hip revision surgery, as Rainelle's symptoms were "fairly well tolerated" and there was an absence of significant pain. R. 1775.

Rainelle treated the neuropathy in her hands with ulnar release surgeries. At her September 2015 visit with Dr. Thomas, Rainelle reported numbness and pain in her hands, and the doctor referred her to a neurologist for a nerve conduction study. R. 1399, 1403. Dr. Bravo conducted a right ulnar nerve release surgery on January 28, 2016, for the pain and numbness in Rainelle's right elbow. R. 1185–90. At her February 2016 visits, Rainelle reported to Drs. Thomas and Bravo that her current medications were controlling her symptoms. R. 1421, 1551. In October 2017, Rainelle had ulnar nerve release surgery in her left hand and a week after the procedure she reported to Dr. Thomas that she was "very happy with the progress" and had no issues. R. 1735. In 2018, Dr. Thomas started Rainelle on Lyrica, which helped to address her neuropathy pain. R. 1689, 1700, 1723, 1728, 1739. In August 2018, Dr. Thomas prescribed Rainelle additional medication to address her neuropathy symptoms. R. 1665, 1671. Several months later in December, Dr. Thomas noted that Lyrica was helping Rainelle's back pain and neuropathy. R. 1839, 1845.

Rainelle regularly treated her depression and anxiety with medication, and from 2018 to 2019, her psychiatric examinations with Dr. Thomas showed normal mood, affect, behavior, judgment, and thought content. R. 1665, 1676, 1700, 1712, 1727, 1862, 1896, 1934. In April 2015, Dr. Thomas prescribed Rainelle with Zoloft for her depression and anxiety (R. 1368–72) and added Vistaril to her medication regimen in June 2015 (R. 1382). Rainelle complained of a lack of energy and interest in activities in July 2015 (R. 1388), but Dr. Thomas did not change her treatment. R. 1392. Until August 2016, Rainelle did not complain about her mental health nor was her treatment changed. R. 1399, 1425, 1431. In August 2016, Rainelle reported having stress, moodiness, sleeping problems, and no energy or motivation, and Dr. Thomas prescribed and adjusted her medication as necessary. R. 1436.

In September 2016, Rainelle was taken to the hospital because she was unresponsive during a party and tested positive for marijuana. R. 1329. Rainelle was stabilized, diagnosed with an overdose of an unknown substance, and discharged after a few days of observation. R. 1324–27, 1336–37. Rainelle reported difficulty sleeping in April 2017, and Dr. Thomas increased her medication dosage. R. 1474. At visits in September and October 2017, Rainelle did not report any ongoing mental health symptoms. R. 1735–39, 1749–54. In February 2018, Rainelle reported that her depression medication was no longer working very well, but that she was "doing okay" with her anxiety medication, so Dr. Thomas adjusted her depression medication. R. 1723, 1728. Dr. Thomas added further depression medication after Rainelle complained of no energy and moodiness in April 2018. R. 1695, 1700.

In June 2018, Rainelle reported that her depression was "doing great" and that she was happy with how she felt. R. 1683. Due to her complaints of sleep difficulty, Dr. Thomas increased her medication dosage. R. 1676. Dr. Thomas made no treatment changes in August

2018. R. 1665. Rainelle had no mental health complaints in November 2018 nor visits from January to April 2019. R. 1890, 1906, 1919, 1930. However, in April 2019, Rainelle reported that she was "not doing as well" in terms of her depression, and Dr. Thomas increased her medication dosages. R. 1890, 1896. Rainelle had no mental health complaints at her June 2019 visit. R. 1857.

Rainelle was hospitalized in December 2019 after an overdose of prescription medication. R. 1606–1642, 1646–57. She initially reported that the overdose was a suicide attempt after multiple December losses and the winter season, but later said that it was unintentional. R. 1612, 1651. In response, the hospital prescribed Rainelle with different medications. R. 1648, 1656. Rainelle was discharged with an "adequate level of functioning" and the ability to function independently. R. 1648. At a follow-up visit in December 2020, Dr. Thomas continued Rainelle's medication. R. 1845.

   2. Medical Opinion Evidence

On February 11, 2015, Richard Surrusco, M.D., reviewed Rainelle's record including her allegations and the medical evidence at the initial administrative level of review. R. 164–166. Dr. Surrusco found that Rainelle had work limitations related to her hip osteoarthritis and that she could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. R. 165. She could sit and stand/walk a total of six hours each in an eight-hour workday. Id. She could occasionally climb ladders, ropes, and scaffolds, stoop, and crawl and she could frequently climb ramps and stairs, kneel, and crouch. Id. Similarly, on April 8, 2015, Carolina Bacani-Longa, M.D. agreed with Dr. Surrusco, but limited Rainelle to four hours of standing and walking in an eight-hour workday and could never climb ladders, ropes, or scaffolds. R. 176–77. Dr. Bacani-Longa also found that Rainelle should avoid concentrated exposure to vibration and

moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. R. 178. The ALJ gave Dr. Surrusco's opinion less weight and Dr. Bacani-Longa's opinion some weight as these determinations were made before her worsening right and left hip issues, right hip replacement, and slight limp which warranted a sedentary work limitation. R. 30.

On February 11, 2015, on the initial level of review, Joseph Leizer, Ph.D., considered Rainelle's allegations and the medical evidence on the record. R. 162–63. Dr. Leizer concluded that Rainelle did not have any restrictions in mental functioning. Id. Similarly on April 10, 2015, Julie Jennings, Ph.D. agreed with Dr. Leizer's finding that Rainelle's mental impairments were non-severe as her exams appeared normal. R. 174–75.

### B. RFC Finding

Rainelle argues that the ALJ's RFC decision is not supported by substantial evidence because the ALJ relied upon stale opinions of non-examining state agency consultants who did not consider over four years of medical records. Pl.'s Br. at 14–22, Dkt. 20. Specifically, she points to the 2015 opinions by Drs. Surrusco and Bacani-Longa that the ALJ assessed in arriving to his physical RFC decision. R. 165, 176. However, the evidence cited by Rainelle was not ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's RFC determination.

An ALJ must develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See Social Security Ruling (SSR) 96-8p, 1996 WL 374184; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ is instructed to

cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's RFC findings are supported by substantial evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. R. 16–31. Unlike the ALJ in Mascio, the ALJ in this case considered conflicting medical evidence and is "not left to guess about how the ALJ arrived at his conclusions." The ALJ's findings include a comprehensive analysis of Rainelle's medical records regarding her mental and physical impairments, the medical opinions, her testimony before the ALJ during the hearings in 2017 and 2020, and the ALJ's conclusions. R. 17–30.

Rainelle argues that while the ALJ summarized her medical evidence, he improperly relied on medical opinions in 2015 that did not assess the remaining evidence on the record to 2019. Pl.'s Br. at 17–20, Dkt. 20. Contrary to Rainelle's argument, the ALJ reviewed the evidence after the 2015 medical opinions and provided a sufficient explanation of Rainelle's physical impairments and how these impairments impacted her ability to work. As stated by Rainelle, the ALJ properly described her medical treatment evidence. R. 21–28. The ALJ explained that the prior administrative medical findings, disputed by Rainelle as "stale opinions," were made in the beginning portion of the relevant period before Rainelle's worsening right hip and eventual right hip replacement, left hip hardware loosening, and slight limp. R. 30. Accordingly, the ALJ gave Dr. Surrusco's opinion less weight and Dr. Bacani-Longa's more restrictive opinion some weight. Id. In fact, the ALJ accommodated the post-2015 medical evidence regarding Rainelle's hips by restricting her to the sedentary level of work not the light exertional level recommended by the state agency physicians. Id. Further, the ALJ considered Rainelle's testimony that her hip pain, lower back pain, hand symptoms, neuropathy, and mental health symptoms made her unable to work because she needed to sit in a recliner all day and could not stand, walk, sit, or be around others, which the ALJ found was not fully supported by the evidence on the record. R. 21, 30.

The ALJ properly reviewed and considered the evidence regarding Rainelle's severe physical impairments through his May 2020 decision. The ALJ noted that Rainelle's initial significant left hip issues lasted less than twelve months from the filing date in October 2014 as shown by Dr. Wolfe's notes that she was progressing well, walking without supports, and had mild pain and no new complaints on October 27, 2014. R. 29, 1518. The ALJ explained that Rainelle began complaining of right hip pain in January 2015 and detailed Rainelle's left hip

injury in March 2016 and subsequent dislocations in May 2016. R. 29–30. The ALJ noted that by October 2019, Rainelle denied pain in either hip and that Dr. Wolfe stated in October 2019 that Rainelle's left hip symptoms were well tolerated with no neurologic deficits and she had a mild limp. R. 29. Thus, the ALJ limited Rainelle to sedentary level of work to accommodate her left hip status post-surgery and right hip issues. R. 29–30.

The ALJ also considered Rainelle's other physical impairments of obesity, knee osteoarthritis, and lower back pain, which were explicitly accommodated by the limitation to sedentary exertional level. R. 28–29. The ALJ noted that while the record did not show complaints regarding numbness in her hands after her ulnar surgery in 2015, he included the limitation on her right-hand controls in the RFC as a precaution for her right palm atrophy in December 2016. R. 17. The ALJ further considered Rainelle's daily activities that she did household activities in short periods, raised a child, cooked using a microwave, shopped and went to the grocery store twice a week with a scooter, and went to church once a month. R. 18–19, 21.

Similarly, the ALJ properly assessed the medical evidence beyond Drs. Leizer and Jennings opinions in 2015 to determine her mental RFC.[5] The ALJ determined that Rainelle had no more than mild limitation in any relevant functional area. R. 18–19. The ALJ noted that Rainelle had normal cognitive findings in primary care visits and medical examinations. R. 18. Further, the ALJ determined that while Rainelle had an attempted suicide overdose in 2019, this event was not representative of her overall condition and was fixed by her medication changes.

---

[5] Although the ALJ did not explicitly weigh the medical opinions of Drs. Leizer and Jennings, this is a harmless error because both doctors found that Rainelle did not have any mental functioning restrictions and could perform basic work activities. R. 162–63, 174–75. Thus, giving the doctors' opinions weight would not change the ALJ's decision that Rainelle did not have severe mental impairments nor the finding of non-disability. R. 18–19, 31; Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 98 (4th Cir. 2015).

R. 18–19. Rainelle reported that her depression was "doing great" in June 2018. R. 1683. The ALJ also noted that Rainelle's mental impairments of depression and anxiety did not affect her ability to attend daily living activities and her providers did not note hygiene issues, which showed she was appropriately adapting and managing herself. R. 19. Thus, the ALJ found that Rainelle could perform basic work activities and that her mental impairments were not severe. R. 18.

The ALJ created a logical bridge from the evidence to the RFC determination and properly assessed Rainelle's physical and mental impairments through a function-by-function analysis. Due to the nature of the administrative process, "there is always some time lapse between the consultant's report and the ALJ hearing and decision," yet the regulations "impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Jarvis v. Saul, No. 2:20CV00001, 2021 WL 1156838, at *11 (W.D. Va. Mar. 26, 2021) (quoting Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). The role of this court is not to reweigh the evidence, as Rainelle urges, or substitute its judgment for that of the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Sullivan, 907 F.2d at 1456. The ALJ adequately explained how he arrived at Rainelle's RFC findings and provided an accurate and logical bridge between the evidence and the findings as required in SSR 96-8p. Accordingly, I find that substantial evidence supports the ALJ's RFC determination that Rainelle can perform sedentary work with limitations.

## CONCLUSION

For the foregoing reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 21)

and **DISMISSING** this case from the court's docket.

Entered: March 25, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge